AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2019 MAR -8 PM 2:47

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

CELLULAR TELEPHONE ASSIGNED CALL NUMBER
(937) 576-6496, IMSI: 310260081978539

)
)
)
)
)
)

Case No. 3 : 19 mj 140

SHARON L. OVINGTON

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A. This court has authority to issue this warrant under 18 U.S.C. sections 2703(c)(1)(A) and 2711(3) (A) and Federal Rule of Criminal Procedure 41.

located in the _____unknown_____ District of _____unknown_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. section 846 | Possession with the intent to distribute and to distribute a controlled substance |
| 21 U.S.C. section 841 | and conspiracy to commit the same |
| 21 U.S.C. section 843 | Unlawful use of a communication facility |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Charles Vill, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-8-19

_____
*Judge's signature*

City and state: Dayton, Ohio

Sharon L. Ovington, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELLULAR TELEPHONE ASSIGNED CALL NUMBER (937) 576-6496, IMSI: 310260081978539 | Case No. ___3:19 mj 140___<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Charles A. Vill, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of a cellular telephone assigned call number (937) 576-6496, placed in the subscriber name of  Keith Baker with an address of 101 Salem Ave, Dayton, Ohio, with IMSI: 310260081978539 (hereinafter referred to as "**Target Telephone**"), whose service provider is T-Mobile, a wireless telephone service provider.  The **Target Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Your Affiant is a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation.  I have been employed as a Special Agent with the DEA since August 2016. In September 2016, I attended the DEA Academy which consisted of 20 weeks of training in conducting federal drug

trafficking investigations, handling confidential sources, conducting undercover operations, conducting mobile, static, foot and electronic surveillance, conducting tactical entry and vehicle arrest operations, defensive tactics, firearms, and additional aspects of conducting DEA lead investigations. I have been assigned to the DEA Dayton Resident Office since April 2017. Prior to employment with the DEA, I was a sworn Law Enforcement Officer of the State of Georgia who was charged with the duty to investigate criminal activity and enforce the criminal laws of the State of Georgia, and employed by the Cobb County Police Department from December 2011 to August 2016. During my employment with the Cobb County Police Department I was assigned to the Marietta-Cobb-Smyrna Organized Crime Task Force Intelligence Unit (MCS Intelligence).  For approximately two years (2012-2014), I was assigned to the Cobb County Police Precinct 3 Morning Watch. I was then assigned to MCS Intelligence from April 2014 to August 2016. My duties included investigations of violations of the Georgia Controlled Substances Act, Murder for Hire, Extortion, Prostitution and Pimping, Human Trafficking, and Criminal Street Gangs.

3.      Since the time of my assignment with the DEA, and during time spent as a Cobb County Police Officer, I have been involved in narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics, and participated in undercover narcotics purchases.  Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived.

4.      Through training and experience, your Affiant is aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard

2

hardline telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841 (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same); and 21 U.S.C. § 843(b) (use of a communications facility to commit a felony) have been committed, are being committed, and will be committed by an individual utilizing the **Target Telephone**. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## **PROBABLE CAUSE**

7.      Your Affiant submits, based on the facts below, that there is probable cause to believe that the **Target Telephone**, as described above, is being utilized by Gerald KILGO, who is a member of a drug trafficking organization (DTO) operating in the Dayton, Ohio area.

8.      On October 31, 2018, Members of the DEA Dayton Resident Office (DRO) conducted a debrief with a Confidential Source (here after CS).[1] During the debrief, the CS

_____

[1] This CS has previously been arrested for loitering.  The CS is currently working with law enforcement authorities for monetary consideration. The information provided by the CS has been corroborated by law enforcement through the use of recorded phone calls.

3

provided information about the drug trafficking activities of Geno LNU aka "Geno Gotti." The CS stated that Geno was an ounce level fentanyl and cocaine distributor. The CS provided the **Target Telephone** as the number used by Geno.

9.     On January 21, 2019, the CS conducted a recorded call with Geno using the **Target Telephone**, which was monitored by members of the DRO. During the call, the CS discussed, through coded language, purchasing ounces of cocaine from Geno. Geno agreed to sell the CS ounces of cocaine for $1,200.00 per ounce, and $600.00 per half ounce. During the call, Geno used the term "girlfriend" to refer to cocaine. Through training and experience, your Affiant knows that "girlfriend" is a term commonly used by drug traffickers to refer to cocaine. Through training and experience, your Affiant also knows that the common price per ounce of cocaine in the Dayton, Ohio area is approximately $1,100.00 to $1,300.00 per ounce.

10.     Members of the DRO searched Facebook for the **Target Telephone.** Investigators observed that the **Target Telephone** was attached to an account in the name "Geno Gotti." Investigators observed the date of birth listed on the Facebook account was January 5, 1984. Investigators conducted a law enforcement query and located a driver's license of Gerald Arthur KILGO with the same listed date of birth. Upon viewing the driver's license photo of KILGO investigators immediately recognized KILGO as the person depicted in the photos on the "Geno Gotti" Facebook account. Investigators observed that 46 Gerlaugh Ave, Dayton, Ohio was the listed residence on KILGO's driver's license.

11.     On January 22, 2019, SA Vill submitted an application requesting the issuance of a search warrant authorizing the monitoring of GPS location of the **Target Telephone**. On the same date, the search warrant was signed by United States District Court Magistrate Judge

Sharon Ovington, and submitted to T-Mobile for activation. Members of the DRO received GPS location data for the **Target Telephone** from January 23, 2019 to February 21, 2019.

12.    On January 25, 2019 additional calls were made by the CS and KILGO using the **Target Telephone** and a narcotics deal to purchase a half ounce of carfentanil was planned to occur at 1309 Saint Adelbert Ave, Dayton. Investigators with the Dayton DRO established surveillance at 46 Gerlaugh, Dayton, Ohio and observed KILGO leave the residence. KILGO later arrived at 1309 Saint Adelbert Ave, Dayton, OH where he distributed the CS approximately 15.2 grams of a white powdered substance that KILGO purported to be carfentanil.

13.    Members of DRO submitted the white powdered substance to the Miami Valley Regional Crime lab for testing, and subsequently received a positive result for the presence of fentanyl.

14.    On February 5 and 6, 2019, the CS again conducted recorded telephone calls with KILGO using the **Target Telephone.** The two planned a narcotics deal for February 6, 2019 in the area of 2200 Salem Ave, Dayton, Ohio. On February 6, 2019, 6the CS met KILGO in the alley behind 2222 Salem Ave, where KILGO distributed approximately 58.7 grams of white powdery substance believed to be fentanyl. Members of the DRO field-tested the white powdery substance, and received a positive result for the presence of fentanyl.

15.    Members of the DRO conducted surveillance of KILGO following the controlled purchase of fentanyl on February 6, 2019. Members of the DRO observed KILGO travel from the alley behind 2222 Salem Ave to 11 Mia Ave, Dayton, Ohio, and subsequently enter the rear door of the residence.

16.    A short time later, members of the DRO observed a brown Chevrolet van with Ohio license plate HJF5552 depart from the residence. As the van began traveling east on 3rd

5

Street, Dayton, Ohio, members of the DRO had a clear view of the driver. A law enforcement query showed the van was registered to Brian PAYNE. Upon viewing the driver's license photo of PAYNE, members of the DRO immediately recognized PAYNE as the driver of the van. From previous narcotics investigations, members of the DRO know PAYNE as a kilogram quantity heroin and cocaine source of supply in the Dayton, Ohio area.

17.     On or about February 25, 2019, members of the DRO received call detail records from T-Mobile for the **Target Telephone**. Members of the DRO conducted telephone toll analysis and observed the **Target Telephone** was in contact with 513-975-7435 on approximately 84 occasions between December 28, 2018 and February 10, 2019. Additionally members of DRO observed that the **Target Telephone** was in regular communication with the 513-975-7435 before, during, and after each controlled purchase from KILGO.

18.     Members of the DRO searched the 513-975-7435 through Facebook and observed it was attached to a Facebook account in the name "Don Chichi." Upon viewing photos on the account, members of DRO immediately recognized the person depicted as Brian PAYNE.

19.     In summary, Affiant believes the **Target Telephone** is currently being used by Gerald KILGO in the distribution of drugs.

20.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS

6

tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

21. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on T-Mobile's network or with such other reference points as may be reasonably available.

22. Based on my training and experience, I know that T-Mobile can collect cell-site data about the **Target Telephone**.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

24. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the

7

subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2)

25.     I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Telephone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

26.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

27.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

8

documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____

Charles A. Vill
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 8th day of March 2019.

_____

SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

9

## **ATTACHMENT A**

### **Property to Be Searched**

1. A cellular telephone assigned call number, (937) 576-6496, placed in the subscriber name of  Keith Baker with an address of 101 Salem Ave, Dayton, Ohio, with IMSI: 310260081978539 ("**Target Telephone**"), whose wireless service provider is T-Mobile, a company headquartered at Parsippany, NJ.

2. Information about the location of the **Target Telephone** that is within the possession, custody, or control of T-Mobile, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the **Target Telephone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Telephone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).